

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

AL:TH
F. #2014R00908

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

November 9, 2017

By Hand and ECF

The Honorable Cheryl L. Pollak
United States Magistrate Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:    United States v. Zummo, et al.
>        Criminal Docket No. 17-601 (ENV)

Dear Judge Pollak:

The government respectfully submits this letter in support of its motion for a permanent order of detention as to the defendant Damiano Zummo. As further described below, because of defendant Zummo's membership in the Bonanno organized crime family of La Cosa Nostra (the "Bonanno crime family"), he poses a danger to the community and a risk of flight, and should be detained pending trial. The government also seeks a substantial bail package with regard to the defendant Salvatore Russo to mitigate the risk of danger and flight from prosecution.

I.    Background

A.    Indictment

On November 1, 2017, a federal grand jury in Brooklyn, New York returned a sealed three-count indictment against Damiano Zummo and Salvatore Russo. As charged in the indictment, the defendants Zummo and Russo participated in a conspiracy to traffic over ten kilograms of cocaine and, on September 14, 2017, distributed nearly a kilogram of cocaine in a Manhattan gelato store in exchange for $38,000.

Zummo is also charged with laundering over $250,000 in cash that he believed to be the proceeds of narcotics trafficking by providing company checks issued to a fictitious consulting company. At Zummo's request, Zummo was provide with false invoices which purported to bill the company for various consulting services. Zummo took a fee of approximately ten percent for each of these money laundering transactions.

B.  Zummo's Membership in the Bonanno Crime Family and Related Crimes[1]

As set forth below, the defendant Damiano Zummo is a long-time inducted member of the Bonanno crime family, a violent criminal enterprise that engages in crimes including murder, robbery, extortion and obstruction of justice.  In November 2015, Zummo travelled to Canada to conduct a Bonanno family induction ceremony, during which he inducted a new member and assigned him to report to a captain within the crime family.  During the ceremony, which was recorded by a cooperating witness ("CW-1"), the following exchange occurred:

ZUMMO:      The reason why we're here is from this day forward, you're gonna be an official member of the Bonanno family.  It's already . . . from this guy, this guy, this guy, everybody approved it, so from this day forward, you're a member of the Bonanno family.  Congratulations.

CW-1:       Thank you.

ZUMMO:      And now I want to introduce you to John.  John, friend of ours with the Bonanno.  John, [CW-1], friend of ours with the Bonanno.  Now, your captain is [name of Bonanno family captain].

CW-1:       Okay.

ZUMMO:      He's our skipper.  [Nickname of Bonanno family member], is our acting.

CW-1:       Okay.

ZUMMO:      You're gonna be in our regime.

CW-1:       Okay.

ZUMMO:      Official is [first name of Bonanno family captain].  You only answer to the Bonanno family.

---

[1]    The government is entitled to proceed by proffer in a detention hearing. United States v. Abuhamra, 389 F.3d 309, 320 n.7 (2d Cir. 2004); United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000); United States v. Martir, 782 F.2d 1141, 1145 (2d Cir. 1986).

Based on information provided by CW-1, Zummo had for several months served as an acting captain of the Bonanno crime family. As an acting captain, Zummo had a "crew" of members and associates to conduct crimes on his behalf. CW-1's information about Zummo's rank in the Bonanno crime family is corroborated by, among other things, consensual recordings of Zummo acknowledging his standing. For example, on August 23, 2017, in a recorded conversation, Zummo explained to CW-1 that Zummo was "keeping the seat warm" but that it is "now official." These references appear to mean that Zummo had been operating in an unofficial capacity as acting captain but was now officially an acting captain of the Bonanno crime family.

Salvatore Russo is a trusted associate of the Bonanno crime family. During the September 14, 2017 controlled purchase of cocaine for which the defendants are charged, Zummo introduced Russo as "my cousin Sal." In another consensually-recorded conversation on September 22, 2017, Zummo indicated that Russo would be responsible for subsequent sales of cocaine: "I'll just bring the kid Sal, that's it. He's the one that brings it."

C. Assault

In addition to the crimes with which Zummo is charged by indictment, the government has also obtained evidence that Zummo directed another Bonanno crime family member to assault a Gambino crime family associate for "bad-mouthing" a Bonanno captain. In a recorded conversation with CW-1 on June 14, 2017, Zummo described the assault:

CW-1:      Did he at least give him a couple of slaps?

ZUMMO:   No, of course.

CW-1:      And what did [first name of Gambino family associate] do, he try defend himself?

ZUMMO:   No, he was screaming like a little girl. . . .

II.   The Bail Reform Act

The Bail Reform Act directs courts to order a defendant detained pending trial if "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). In cases like this one, involving specified violations of the Controlled Substances Act, "it shall be presumed," subject to rebuttal by the defendant, "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3).

The presumption means that the Court must initially assume there is "no condition or combination of conditions that will reasonably assure the appearance of the person as required and the safety of any other person and the community." Id. The defendant must come "forward with evidence that he does not pose a danger to the

3

community or a risk of flight." United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001). Even if the defendant were to meet his burden of production, "the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." Id.

Four factors guide the Court's determination of whether the defendant should be released on bail: (1) the nature and circumstances of the crimes charged, "including whether the offense is a crime of violence . . . . or controlled substance [offense]"; (2) the "weight of the evidence against" the defendant; (3) the "history and characteristics" of the defendant; and (4) the seriousness of the danger posed by the defendant's release. See 18 U.S.C. § 3142(g).

In considering applications for bail, courts have observed that organized crime defendants pose a particular threat to the community due to the continuing nature of criminal organizations. Because organized crime defendants are often career criminals who belong to an illegal enterprise, they pose a distinct threat to commit additional crimes if released on bail. See United States v. Salerno, 631 F. Supp. 1375 (S.D.N.Y. 1986) (finding that the illegal businesses of organized crime require constant attention and protection, and recognizing a strong incentive on the part of its leadership to continue business as usual).

Congress noted that defendants pose a danger to the community not only when they commit acts of violence, but also when it is likely that they will commit even non-violent crimes that are detrimental to the community. See S. Rep. No. 225 98th Cong., 1st Sess. at 6-7, as reprinted in 1984 U.S. Code Cong. & Admin. News 3182 ("Senate Report"), 3195 ("[L]anguage referring to safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community . . . . The Committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence."). In Salerno, the court approvingly quoted the Second Circuit's decision in United States v. Colombo, 777 F.2d 96 (2d Cir. 1985), which had held:

> In light of Congress' direction that "[w]here there is a strong probability that a person will commit additional crimes if released, the need to protect the community becomes sufficiently compelling that detention is, on balance, appropriate," . . . we hold that the decision to release Colombo based upon conditions which we consider to be wholly inadequate was clearly erroneous.

631 F. Supp. at 1371 (quoting Colombo, 777 F.2d at 99 (quoting Senate Report at 3189) (citation omitted)).

The Second Circuit has repeatedly stated that even elaborate conditions of home detention cannot substitute for incarceration where the defendant cannot be trusted to comply with the conditions of release. See United States v. Millan, 4 F.3d 1038, 1048-49 (2d Cir. 1993) (home detention and electronic surveillance can be circumvented); United

4

States v. Orena, 986 F.2d 628, 632 (2d Cir. 1993) ("home detention and electronic monitoring at best 'elaborately replicate a detention facility without the confidence of security such a facility instills'") (quoting United States v. Gotti, 776 F. Supp. 666, 672 (E.D.N.Y. 1991)).

III.    Zummo Poses a Danger to the Community and Risk of Flight

As an initial matter, because both Zummo and Russo have been indicted for narcotics-trafficking offenses that carry a mandatory minimum sentence of ten years' imprisonment, there is a presumption that there are no conditions of release that can reasonably assure their appearance and the safety of the community. See 18 U.S.C. § 3142(e)(3). Zummo cannot rebut such a presumption, regardless of any bail package that may be proposed, because the relevant considerations under the Bail Reform Act clearly support a finding of dangerousness and risk of flight.

The defendants are charged with conspiracy to traffic over ten kilograms of cocaine, a serious offense. One cocaine transaction took place in a gelato store, an establishment open to members of the public, including children. The evidence of the defendants' guilt is exceedingly strong. The government intends to prove the defendants' guilt at trial through consensual recordings, the testimony of multiple witnesses, security video footage of the narcotics transactions, and physical evidence.

Zummo's history and characteristics also clearly favor detention. As a acting captain within a violent organized crime family, Zummo poses a particular threat if he were released because of his ability and demonstrated history of directing those who report to him to commit crimes on his behalf. Zummo has also expressed willingness to obstruct justice by bribing members of law enforcement. The seriousness of the danger posed by the defendant's release should not be underestimated in light of his membership in, and leadership role within, the Bonanno family, a violent criminal enterprise, and his involvement in crimes of violence. As noted above, courts in this circuit have recognized that when organized crime defendants, such as the defendant in this case, are charged with employing violent conduct, the risk of continued violent conduct is substantial and justifies detention. See Salerno, 631 F. Supp. at 1364. Put simply, not even home confinement can protect the community from Zummo.

IV.    A Substantial Bail Package is Warranted For Defendant Russo

The Court should not release Russo absent a substantial bail package, given his risk of flight and failure to abide by court-imposed release conditions. The mandatory minimum sentence of ten years' imprisonment gives Russo a substantial incentive to flee. United States v. Dodge, 846 F. Supp. 181, 184-85 (D. Conn. 1994) (possibility of a "severe sentence" heightens the risk of flight).

Russo is currently on supervised release in this Court, stemming from an April 30, 2015 conviction in this Court for failure to account for and pay over Federal Insurance Contributions Act taxes. In United States v. Barnett, the district court noted several factors

that were "critical to the analysis of whether various bail conditions are sufficient to ameliorate the risks of danger and flight particular defendants might pose," noting:

> The quintessential factor is whether a defendant will do what the court directs. There are a variety of conditions that could reduce potential danger and flight if a defendant would abide by them. Examples include home confinement, electronic monitoring, curfews, pretrial services or family supervision, drug testing and treatment, and employment or educational mandates. <u>However, none of these conditions will suffice to protect the community or minimize the flight risk if a defendant's past behavior amply demonstrates that he will not honor them.</u> In other words, past behavior best predicts future behavior and whether the court can rely on a defendant's good faith promises. Therefore, an analysis of how a defendant has honored his criminal justice promises in the past is a critical component of the bail analysis.

<u>United States v. Barnett</u>, No. 5:03-CR-243(NAM), 2003 WL 22143710, at *12 (N.D.N.Y. Sept. 17, 2003) (emphasis added). In light of Russo's readiness to commit serious additional federal crimes while under this Court's supervision, the Court should require a substantial bail package, and should not release Russo absent such a package, to mitigate the risk of danger or flight from prosecution.

V.    Conclusion

   For the foregoing reasons, the government respectfully requests that the Court enter a permanent order of detention as to defendant Damiano Zummo and should not release Russo absent a substantial bail package.


             Respectfully submitted,

             BRIDGET M. RODHE
             Acting United States Attorney


       By:  /s/
             Tanya Hajjar
             Drew Rolle
             Assistant U.S. Attorneys
             (718) 254-6109


cc:  Hon. Eric N. Vitaliano (by hand and ECF)
    Defense Counsel (by hand and ECF)
    Clerk of Court (by ECF)